**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JOSEPH G. WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:12-cv-932** |
| | ) | |
| **DAVIDSON COUNTY SHERIFF'S OFFICE;** | ) | **Judge Trauger** |
| **DARON HALL, SHERIFF;** | ) | |
| **GAREN BLANCHARD and JANE DOE,** | ) | |
| **PROBATION OFFICERS AT TENNESSEE** | ) | |
| **DEPARTMENT OF PROBATION AND PAROLE;** | ) | |
| **JOHN DOE, SUPERVISOR, TENNESSEE** | ) | |
| **DEPARTMENT OF PROBATION AND PAROLE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Plaintiff Joseph Williams, proceeding *pro se*, brings suit under 42 U.S.C. § 1983 for alleged violations of his constitutional rights. He also asserts supplemental state-law tort claims. The plaintiff is a state prisoner presently confined at the Metro-Davidson County Detention Facility in Nashville, Tennessee. Because he is a prisoner who proceeds *in forma pauperis* against government officials, the complaint is before the court for initial review pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a), and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *reversed on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

## I.    FACTUAL ALLEGATIONS

The plaintiff names five defendants in this action, including the Davidson County Sheriff's Office; Sheriff Daron Hall; Probation Officers Garen Blanchard and Jane Doe; and Supervisor of the Tennessee Department of Probation and Parole, John Doe.

### A.    The Allegations Concerning Sheriff Hall and the Sheriff's Office

The plaintiff alleges that he pleaded guilty to a violation of the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act of 2004, Tenn. Code Ann. § 40-39-208, on August 25, 2011. He was sentenced to 180 days in jail plus four years of probation. He alleges that, at the time he was sentenced, he had already served 180 days and therefore was due to be released from physical custody on the same day. However, the plaintiff was at that time already serving another sentence

for an unrelated conviction, which did not expire until September 2, 2011.

The plaintiff asserts that September 2, 2011 was his court-ordered release date and that he was legally entitled to have been released from physical custody on that day. Instead, however, the plaintiff was not released until September 7, 2011. The plaintiff alleges that he was wrongfully imprisoned in jail for five days beyond the expiration of his sentence.

The plaintiff alleges, "upon information and belief," that the Davidson County Sheriff's Office ("DCSO") regularly fails to release inmates on time. He is aware of other inmates who have complained that they were held past their court-ordered release dates, especially when the putative release date occurred on a Friday or on a day prior to a holiday weekend. The plaintiff also alleges that the DCSO has a custom and practice of not releasing inmates on Fridays, especially Fridays just before holiday weekends, to avoid "flooding" the city with so-called criminals and adversely affecting the city's tourism industry. The plaintiff alleges that the Metro Police Department regularly stages "roundups" of homeless people on Thursdays, by making up false charges against them, in order to "clean the streets" before the weekend. (ECF No. 1, at 5.)

The plaintiff asserts that the DCSO intentionally failed to release the plaintiff on his court-ordered release date because it was the Friday before the Labor Day weekend, and the plaintiff was homeless and would not be required to report to probation or to register as a sex offender until after the holiday.

The plaintiff asserts that Sheriff Hall is liable to him based on the Sheriff's personal promulgation and enforcement of policies and procedures regarding the timely processing of release orders and therefore is personally responsible for the plaintiff's having been held for five days longer than he should have been.

Based on these allegations, the plaintiff asserts that the DCSO and Sheriff Hall, by keeping him in jail five days longer than his court-ordered release date, unlawfully denied him of five days of liberty without due process of law, in violation of the Fourteenth Amendment; the right to be free from cruel and unusual punishment in violation of the Eighth Amendment. The plaintiff also alleges that the defendants are liable to him under state law for false imprisonment.

B.     The Allegations Against Blanchard

The plaintiff alleges that, after he was (belatedly) released from the Davidson County Criminal Justice Center ("CJC"), he reported to the Tennessee Department of Probation and Parole on or about September 9, 2011. He initially reported to Probation Officer Garen Blanchard, because Jane Doe, his assigned probation officer, was unavailable. The plaintiff alleges that, among other conditions of probation, he was required to wear a GPS monitor on his ankle and to report to his probation officer approximately every two weeks.

On September 12, 2011, using the GPS monitor, Defendant Blanchard located and confronted the plaintiff and the plaintiff's girlfriend in downtown Nashville. Blanchard informed the plaintiff that he was not permitted to be downtown. Blanchard also loudly informed the plaintiff's girlfriend that the plaintiff was a "sex offender out of Florida" (ECF No. 1, at 7) and informed her that the plaintiff was not allowed to date women with children because his victim was under eighteen. The plaintiff states his belief that, as a legal matter, Blanchard's statement was untrue.

The plaintiff alleges that Blanchard's actions amount to an invasion of his constitutional right to privacy under the Fourth Amendment to the United States Constitution and the right to intimate association under the First Amendment. He claims that by callously disregarding the plaintiff's safety by announcing loudly that the plaintiff was a sex-offender, he placed the plaintiff in physical danger, thereby violating the plaintiff's Eighth Amendment right to be free from cruel and unusual punishment and that his deliberate indifference to the plaintiff's right to privacy violated the Fourteenth Amendment. He also alleges that Blanchard is liable to him under state tort law for invasion of privacy and defamation.

C.    **The Allegations Against Blanchard and Jane Doe**

At a meeting the plaintiff had with Jane Doe and Blanchard on September 23, 2011, the defendants informed the plaintiff that he was not permitted to be downtown, at the Farmers' Market, under the Jefferson Street Bridge between First and Second Avenue North, or near the river between the Department of Human Services and the railroad bridge on First Avenue North, which was where the plaintiff's tent was located.

The plaintiff alleges that the defendants' actions in placing such severe travel restrictions on him prevented him from eating and worshipping under the Jefferson Street Bridge, besides evicting him from his only "home," and from seeking services from the Tennessee Department of Human Services  The plaintiff

states that there are various organizations and individuals who feed homeless people, like the plaintiff under the Jefferson Street Bridge and provide religious services that the plaintiff had been attending regularly for a long time. When the plaintiff tried to explain this fact to Blanchard and Doe, they threatened to have him arrested if he returned to either location. The plaintiff alleges that defendant John Doe, who is Blanchard and Jane Doe's supervisor, overheard this conversation but failed to intervene, even though he knew or should have known that the probation officers' restrictions were unlawful.

The plaintiff asserts that under state law, Tenn. Code Ann. § 40-39-211, he is permitted to be in an area within 1,000 feet of a park or daycare if he has a specific and legitimate reason for being there, such as eating and worshipping with ministries, or applying for food stamps at the Department of Human Services. The plaintiff insists the restrictions imposed by Blanchard and Jane Doe were not a valid application of the law.

In short, the plaintiff alleges that the overly burdensome restrictions imposed by Doe and Blanchard prevented him from eating or worshipping at nearly every place in Nashville that caters to the homeless population. The plaintiff alleges that, as a result of these actions, the defendants are liable to him for violation of his rights to privacy, due process, equal protection, and freedom of religion and association. He further alleges that the defendants' actions deprived him of access to the basic necessities of life and thereby violated the Eighth Amendment's prohibition against cruel and unusual punishment. He further asserts that the defendants' actions constituted the torts of invasion of privacy and deprivation of property.

The plaintiff claims that supervisor John Doe's failure to intervene when Blanchard and Jane Doe placed the travel restrictions on the plaintiff constituted deliberate indifference to the plaintiff's liberty interest in violation of the right to be free from cruel and unusual punishment.

D.      The Allegations of Cruel and Unusual Punishment

The plaintiff alleges that the GPS tracking device cut his ankle, causing bleeding, severe pain, and permanent scars. When he showed Blanchard and Jane Doe the problem at his meeting with them on September 23, 2011, Blanchard told him to wear socks. The plaintiff told him he wore sandals and anyway could not afford socks, and that in any event the GPS would tear through the socks and continue to chafe his skin. Blanchard told him to go the Rescue Mission to get shoes, but the plaintiff asserts that the shoes

available at the Rescue Mission did not fit him.

The plaintiff alleges that the defendants did nothing to intervene or propose a reasonable solution to the problem, and that their failure to assist the plaintiff constituted a denial of his Eighth Amendment right to be free from cruel and unusual punishment.

The plaintiff was arrested again on new charges of violation of the sexual offender registry law, thus ending his problems with his probation officers, on September 30, 2011.

The plaintiff seeks declaratory relief as well as compensatory and punitive damages.

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any portion of a civil complaint filed *in forma pauperis* that (1) fails to state a claim upon which relief can be granted, or (2) is frivolous.  Section 1915A(a) similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes  because the relevant statutory language tracks the language in Rule 12(b)(6)."  *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).  Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true."  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up unpled allegations."  *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## III.    ANALYSIS AND DISCUSSION

To state a claim under § 1983, a plaintiff must "identify a right secured by the United States Constitution and deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *West v. Atkins*, 487 U.S. 42, 48 (1988). Claims against entities or individuals who are not state actors and "persons" subject to suit under § 1983 must be dismissed. Claims that do not state a deprivation of a right secured by the Constitution or federal law must likewise be dismissed.

### A.    The Claims against Sheriff Hall and the DCSO

With respect to the plaintiff's claim that he was not released from jail until five days after his sentence expired, it is clear that the plaintiff states a claim for violation of his constitutional rights. *See Shorts v. Bartholomew*, 255 F. App'x 46 (6th Cir. 2007) ("[T]hat the right at issue is secured by the Constitution and laws of the United States, is beyond dispute: when a prisoner's sentence has expired, he is entitled to release." (citing *Whirl v. Kern*, 407 F.2d 781, 791 (5th Cir. 1969) (holding that "[t]here is no privilege in a jailer to keep a prisoner in jail beyond the period of his lawful sentence")); *id.* ("[A]n incarcerated inmate has a liberty interest in being released at the end of his term of imprisonment.' (quoting *Schultz v. Egan*, 103 F. App'x 437, 440 (2d Cir. 2004)).

The plaintiff sues both the Davidson County Sheriff's Office and Sheriff Daron Hall for violation of that right. The Davidson County Sheriff's Office, however, is not an entity that may be sued under § 1983. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *see also Mathes v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:10-cv-0496, 2010 WL 3341889, at *2, *3 (M.D. Tenn. Aug. 25, 2010) (noting that "since *Matthews*, federal district courts in Tennessee have frequently and uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit" under Tennessee law, and therefore granting the motion to dismiss the § 1983 claim against the Davidson County Sheriff's Office). The § 1983 claims against the Davidson County Sheriff's Office are therefore subject to dismissal for failure to state a claim upon which relief may be granted.

Insofar as the allegations in the complaint suggest that Sheriff Hall "either caused—through an official policy or custom—or failed to prevent—by breaching a duty to implement a requisite policy or process—the

harm of incarcerating [the plaintiff] beyond the term of his sentence," the plaintiff states a colorable claim against Sheriff Hall in his official capacity. *Cf. Shorts*, 255 F. App'x at 57. As the Sixth Circuit stated in *Shorts v. Bartholomew*:

> [O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. Suits against [municipal] officials in their official capacity therefore should be treated as suits against the [municipality], and therefore, the entity's policy or custom must have played a part in the violation of federal law. A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. A custom, however, need not be formally approved, but must be so permanent, widespread, or well-settled as to have the force of law.

*Id.* (internal quotation marks and citations omitted).

The plaintiff also seeks to hold Sheriff Hall liable in his individual capacity. In that regard, the plaintiff alleges that Sheriff Hall is "legally responsible for the operation of the Davidson County Criminal Justice Center and for the welfare of all the inmates of that jail, which includes creating a policy . . . which subordinates were to follow in implementing release orders of the court. He was thus legally responsible for the timely release of inmates from that jail." (ECF No. 1, at 3.) Elsewhere in the complaint, the plaintiff alleges that "Defendant Hall was responsible for creating policies and procedures in timely processing court orders to release prisoners on time, in conformity with the sentence imposed by the court." (ECF No. 1, at 6.) In other words, although the plaintiff does not allege that Sheriff Hall directly and personally was involved with imprisoning the plaintiff beyond the term of his sentence, or was even aware of the plaintiff's presence in the CJC, he does allege that the Sheriff, pursuant to a duty imposed by his job title, created and approved a constitutionally defective process for releasing inmates from jail.

As the Third Circuit noted under analogous circumstances:

> When an official authorizes constitutionally inadequate procedures, the official's liability is not negated by a showing that he or she did not intend to deprive the plaintiff of due process of law. Any state-of-mind requirement of the due process clause is satisfied if the official authorizes a system with the intention that it will operate to deprive persons of life, liberty, or property, whether or not he intends the deprivation to be without due process of law.

*Sample v. Diecks*, 885 F.2d 1099, 1114 (3d Cir. 1989) (internal citation omitted)

Under these circumstances, the court finds that the plaintiff has stated a colorable claim against Sheriff Hall in his individual capacity as well. Although the court expresses no opinion as to the ultimate merit

of the plaintiff's claims, his claims against Sheriff Hall in both his official and individual capacity will, at this stage, be permitted to proceed.[1]

**B.      The Claims Against Jane Doe and Garen Blanchard**

The probation officers, in their individual capacity, are state actors against whom a § 1983 claim may lie. The question is whether the plaintiff has alleged facts which, if true, would establish that these defendants violated any of the plaintiff's constitutionally protected rights. In that regard, the court finds that the plaintiff's allegations suggest that the probation officers were not working simply to ensure that the plaintiff complied with the terms of his probation, but imposed additional conditions upon the terms of probation that were not required either by court order or state law. These allegations appear to state colorable claims against these defendants based on their alleged violation of the plaintiff's Fourteenth Amendment due-process rights, as well as his First Amendment right to freedom of association, and for cruel and unusual punishment/deliberate indifference in violation of the Eighth Amendment, among possible others.

Again, the court expresses no opinion as to the merits of the claims, but finds that they are not subject to dismissal upon initial review.

**C.      The Claims Against John Doe**

With respect to John Doe, a supervisor at the Tennessee Department of Probation and Parole, the plaintiff's alleges that John Doe was "meandering nearby" when Jane Doe and Blanchard were imposing unlawful travel restrictions upon the plaintiff, but failed to intervene, and that this failure to act constituted deliberate indifference to the plaintiff's liberty interest and a violation of his right to be free from cruel and unusual punishment.

It is well established that there is no *respondeat superior* liability under § 1983; thus, liability will not lie "where the allegation of liability is based upon a mere failure to act. Rather, the supervisors must have actively engaged in unconstitutional behavior." *Gregory v. Louisville*, 444 F.3d 725, 751 (6th Cir. 2006). The plaintiff here does not allege that John Doe had actual notice of the terms of the plaintiff's probation, and the mere fact that he was "meandering" in the vicinity of the plaintiff's meeting with Jane Doe and Blanchard does

---

[1] The complaint states that Sheriff Hall "is sued in his individual capacity." (ECF No. 1, at 3.) Construing the allegations in the complaint broadly, as is appropriate for a *pro se* pleading, the court finds that the factual allegations support claims against Sheriff Hall in both his individual and official capacities.

not suggest that supervisor John Doe was actively involved in or implicitly approved or authorized the allegedly unconstitutional behavior of Jane Doe and Garen Blanchard. The claims against John Doe are therefore subject to dismissal on initial review for failure to state a claim upon which relief may be granted.

## IV. CONCLUSION

For the reasons stated herein, the claims against the DCSO and against Probation Supervisor John Doe will be dismissed for failure to state a claim upon which relief may be granted. The individual-capacity and official-capacity claims against defendant Sheriff Daron Hall, and the individual-capacity claims against defendants Jane Doe and Garen Blanchard will be permitted to proceed.

An appropriate order will enter.

Aleta A. Trauger
United States District Judge